IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MASON SHANNON, | ) |
| | ) No. 24-cv-12078 |
| Plaintiff, | ) |
| v. | ) Judge Jeffrey I. Cummings |
| | ) |
| KAREN DONNELLY, | ) |
| GEORGE MUELLER, GREGORY | ) |
| STICKA, et. al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mason Shannon filed this lawsuit against the County of LaSalle, certain prosecutors at the LaSalle County State's Attorney's Office (namely, Karen Donnelly, George Muller, and Gregory Sticka) (the "Prosecutors), and certain law enforcement officers at the LaSalle County Sheriff's Office (namely, William Norman, Josh McGrath, Adam Diss, Thomas Pocivasek) (the "Officers"). Plaintiff alleges defendants violated his constitutional rights by unlawfully detaining him and fabricating evidence to implicate him in the death of Michael Castelli, who died following the attempt by plaintiff and his co-workers to restrain him after Castelli took psychedelic mushrooms and became violent. In plaintiff's complaint ("Complaint"), he brings claims under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments, conspiracy, and failure to intervene, as well as several state law claims. He also brings a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), against the County.

The defendants filed three separate motions to dismiss asserting that Shannon's claims should be dismissed pursuant to Federal Rules 8, 10, and 12(b)(6), (Dckt. ##18, 20, 22). Among other things, defendants assert that Shannon's unlawful detention claim is time-barred and that he

1

has failed to allege a due process claim for fabrication of evidence. The facts as alleged show that Shannon went through a number of traumatic experiences after Castelli's death. Nonetheless, for the reasons that follow, the Court agrees that Shannon's claims should be dismissed.

I.  **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and the complaint must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Nonetheless, courts are permitted to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (cleaned up).

II.  **BACKGROUND**

The facts below are drawn from the allegations in the Complaint, (Dckt. #1).

A.  **Michael Castelli's Death**

On July 20, 2017, Michael Castelli ("Castelli") asked Mason Shannon ("Shannon" or "plaintiff") to pick him up at bar where he was drinking, and they thereafter drove to Shannon's trailer at Bonnie Plants (Shannon's workplace), and watched YouTube videos about skydiving.

(*Id.* ¶¶26–27). While together in the trailer, Castelli consumed more alcohol and also smoked cannabis. (*Id.* ¶¶7, 29–30).

At around 11:00 p.m., Shannon and Castelli left to investigate a light that was on in one of the property's greenhouses. (*Id.* ¶28). Shannon's co-workers Joseph Brewer ("Brewer") and Jordan Wilkinson ("Wilkinson") were there unloading and storing pallets. (*Id.* ¶32). At this time, Shannon noticed that Castelli began to act strange and told him that he would drive him back to town. (*Id.* ¶33). Before he could do so, Castelli disappeared and "[u]nbeknownst to Shannon, at some point that evening Castelli had ingested psychedelic mushrooms." (*Id.* ¶¶35–36). When Shannon finally located Castelli, at least thirteen minutes later, he was "delirious and violent." (*Id.* ¶38). Castelli physically attacked and choked Shannon and punched Wilkinson on the side of his head. (*Id.* ¶39). Shannon and Brewer attempted to restrain Castelli and Wilkinson, called the police, and ran to get the Bonnie Plant supervisor, James Clouse ("Clouse"), who then joined in the efforts to subdue Castelli. (*Id.* ¶¶40–42).

After calling the police again, the operator told Wilkinson that the men should try and "hold Castelli until an officer arrives," (*id.* ¶43), and the men then zip-tied Castelli's wrists, which he thereafter broke out of, (*id.* ¶¶43–45). Brewer initially held Castelli in a neck restraint, and then Shannon took over while Brewer attempted to hold Castelli's legs. (*Id.* ¶¶47–48). Shortly after Shannon placed Castelli in a neck restraint, LaSalle County Deputy William Norman ("Norman") arrived and handcuffed Castelli. (*Id.* ¶49). Castelli became unresponsive shortly after being handcuffed and CPR efforts were unsuccessful. (*Id.* ¶¶50–51). Castelli was pronounced dead at the hospital. (*Id.* ¶53).

### B. The LaSalle County Sheriff's Office and LaSalle County State's Attorney's Office Investigation

Detective Thomas Pocivasek was assigned to investigate the matter and Shannon, Brewer, Wilkinson, and Clouse each wrote a one-page summary regarding the events that transpired. (*Id.* ¶¶54–55). Wilkinson went to the police station to provide a videotaped statement, but the other three (Shannon, Brewer, and Clouse) requested an attorney. (*Id.* ¶56). According to Shannon, once they asked for an attorney, "the investigation took an ugly turn" and law enforcement "assumed that Shannon must have committed a crime." (*Id.* ¶57).

Dr. Valerie Arangelovich ("Dr. Arangelovich") autopsied Castelli and signed a September 7, 2017 report finding that Castelli "died of asphyxia due to a physical altercation." (*Id.* ¶¶59–60). Five days later, after an unrecorded phone call with the prosecutors, Dr. Arangelovich concluded that Castelli was choked to death. (*Id.* ¶¶61–62).

On September 8, 2017, prosecutors charged Shannon and Brewer with involuntary manslaughter. (*Id.* ¶¶63–64). A police technician went to examine Castelli's body several hours after he was pronounced dead and noticed two drops of semen on or near his penis. (*Id.* ¶¶86, 88). According to the Complaint, the drops were bodily secretions that happened over time while Castelli lay on a gurney in the hospital. (*Id.* ¶89). The drops of semen were used to establish probable cause for a warrant to collect biological samples from Shannon's body, along with the fact that Shannon and Castelli were spending time together in Shannon's trailer. (*Id.* ¶¶89, 92). The warrant affidavit represented that semen was "dripping" from Castelli's penis, and did not mention that the semen was observed several hours post-mortem. (*Id.* ¶¶86–92). The affidavit also did not mention that Castelli and Shannon were fully clothed on the night of Castelli's death. (*Id.* ¶94).

Shannon was back at the LaSalle County Sherrif's Department, "locked in a cold interview room" when a police technician entered to execute the search warrant and "forced him to provide evidence as if he had raped Castelli." (*Id.* ¶¶58, 95). Shannon was ordered to "pull out tufts of his own pubic hair," collect samples with a cotton swab, and allow photographs to be taken of his genitals. (*Id.* ¶¶96–99). The technician drafted a report that referred to Shannon as an "admitted homosexual." (*Id.* ¶100).

Clouse, Brewer, and Wilkinson all provided statements to the Officers. On October 20, 2017, Clouse went to the LaSalle County State's Attorney's Office for a pre-arranged proffer statement. (*Id.* ¶104). The notes from Clouse's proffer statement reflect that Clouse was not present when Castelli was handcuffed. (*Id.* ¶111). The notes contradict Clouse's one-page handwritten statement provided on the night of Castelli's death which state that Clouse was present. (*Id.* ¶112). Brewer gave a videotaped interview stating that Castelli was responsive right up until the time he was handcuffed, but this portion of his videotaped interview was excluded from police reports.[1] (*Id.* ¶¶143–46). Wilkinson gave a videotaped proffer statement, allegedly in exchange for a lesser sentence for an Aggravated Battery to a Child charge from an unrelated incident. (*Id.* ¶¶147, 149–50). In his statement, Wilkinson stated that Castelli was "grunting as if in a struggle" while Norman handcuffed him, and, according to Shannon, the Officers intentionally excluded this answer from the report memorializing Wilkinson's statement because they wanted Wilkinson to falsely testify that Castelli was dead when he was handcuffed.[2] (*Id.* ¶¶148, 157).

---

[1] Shannon only alleges that Brewer's answer was excluded from a report. It is unknown whether the videotaped interview, which would reflect Brewer's answer, was turned over to Shannon's attorney.

[2] Again, the Court does not know if the videotaped statement was provided to Shannon's defense counsel.

On October 24, 2017, the prosecutors wrote a supplemental opinion for Dr. Arangelovich that "was deceptively written in [] first person" as if Dr. Arangelovich wrote it herself. (*Id.* ¶¶119, 122, 125). Dr. Arangelovich crossed out portions of the prosecutors' draft, "showing that she would not exclude certain natural causes of Castelli's death," and included handwritten comments, but her edits were not provided to Shannon's attorney. (*Id.* ¶¶123–24).

### C. The First-Degree Murder Charge and Detention

On December 22, 2017, the prosecutors charged Shannon with first degree murder. (*Id.* ¶65). Shannon alleges that the charge was filed without probable cause and "intend[ed] to force him to plead guilty to a lesser offense." (*Id.* ¶129). He was arrested the same day and detained. (*Id.* ¶65).

On January 2, 2018, Norman testified before the grand jury. (*Id.* ¶133). Shannon claims that the prosecutors conspired with Norman to falsely testify in order to convince the grand jury that Castelli was dead when Norman handcuffed him. (*Id.* ¶134). Norman testified to the grand jury that he only placed one handcuff on Castelli before immediately noticing that he was unresponsive, but later recanted that testimony and testified that between one and two minutes elapsed between the time he fully handcuffed Castelli and when he began CPR. (*Id.* ¶¶135–37).

Ultimately, the grand jury did not find probable cause and declined to indict Shannon on the first-degree murder charge. (*Id.* ¶138). Shannon was released from custody on January 3, 2018.[3] (*Id.* ¶67). A few days later, on January 9, 2018, the prosecution dismissed the murder charge.[4] (Dckt. #27-2). The prosecutors "threatened Shannon with resurrecting the murder

---

[3] Shannon alleges that he was released on January 3, 2017, twelve days after his arrest on December 22, 2017. (Compl. ¶¶65, 67). The Court assumes that Shannon inadvertently used "2017" for his release date instead of 2018.

[4] Shannon alleges that "[s]ome months later, the Prosecutors dismissed the murder charge," (Compl. ¶141), but defendants attach the County's dismissal of the charge which is dated January 9, 2018, (Dckt. #27-2). The Court takes judicial notice of the prosecution's dismissal of Shannon's murder charge,

6

charge unless Shannon accepted a five-year prison sentence for Involuntary Manslaughter." (Compl. ¶140). Shannon refused and his case proceeded to a bench trial in front of LaSalle County Chief Judge Howard Christopher Ryan solely on the involuntary manslaughter charge. (*Id.* ¶¶68–69). On September 13, 2018, Judge Ryan found Shannon guilty. (*Id.* ¶70).

### D. Post-Trial Proceedings

After his first trial ended, Shannon's defense attorney called to order trial transcripts for post-trial motions and learned that Judge Ryan's wife was the court reporter who prepared the transcripts. (*Id.* ¶¶71–73). Shannon's attorney alleged that the money paid to the court reporter ($2,140) constituted marital income for both the reporter and Judge Ryan and created a conflict of interest. (*Id.*). Judge Ryan thereafter recused himself and Kankakee County Judge William Dickenson was appointed to preside over the case. (*Id.* ¶72). Judge Dickenson ordered a new trial on December 23, 2019, because of Judge Ryan's "appearance of impropriety." (*Id.* ¶73).

Also during post-trial proceedings, Shannon's attorney subpoenaed Dr. Arangelovich, leading the Prosecutors (on behalf of the LaSalle County State's Attorney's Office) to file a recusal motion. (*Id.* ¶¶74–75). The recusal motion disclosed that the Prosecutors wrote Dr. Arangelovich's expert opinion themselves and "failed to disclose a draft of the doctor's report to the defense in discovery," and "acknowledged that the way they handled the proffer statement of James Couse was 'problematic.'" (*Id.* ¶¶76–77). The Illinois Attorney General was thereafter substituted as the prosecutor and Shannon's second trial began in February 2024. (*Id.* ¶¶79–80).

---

attached as Exhibit B to defendants' joint reply brief in support of their motions to dismiss. (Dckt. #27-2). The Seventh Circuit has made clear that district courts can take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). "The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." *Id.* at 1081 (cleaned up).

Shannon was acquitted on March 14, 2024. (*Id.* ¶81). He filed this lawsuit on November 22, 2024. (Dckt. #1).

### III. DISCUSSION

**A. Shannon's Unlawful Detention Claim is Dismissed.**

Shannon brings an unlawful detention claim under the Fourth and Fourteenth Amendments. He alleges that defendants accused him of criminal activity and "exerted influence to initiate, continue, and perpetuate judicial proceedings against" him without any probable cause for doing so "in spite of the fact that they knew Plaintiff was innocent." (*Id.* ¶193). Defendants argue that Shannon's unlawful detention claim is (1) governed solely by the Fourth Amendment, not the Fourteenth Amendment; and (2) time barred. (Dckt. ##18 at 4–5; 20 ¶6; 22 at 22–23; 27 at 13–14). Shannon does not respond to defendants' argument related to the inapplicability of the Fourteenth Amendment but does contend that his claim is timely. (Dckt. #26 at 24–27).

The statute of limitations is an affirmative defense. Here, the parties agree that the applicable statute of limitations is two years. *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (Section 1983 claims "are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred.") (citing 735 ILCS 5/13-202 (two year statute of limitations in Illinois)); *Flowers v. Stec*, No. 20 CV 6498, 2023 WL 15474, at *2 (N.D.Ill. Jan. 2, 2023) (statute of limitations is two years for unlawful pretrial detention claim). To determine the accrual date, courts look to "when the plaintiff has a 'complete and present cause of action.'" *Williamson v. Ortiz*, No. 18 CV 2028, 2020 WL 7013970, at *5 (N.D.Ill. Nov. 28, 2020), *quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 195 (1997).

8

While it is "irregular" to dismiss a complaint at the pleading stage based on a statute of limitations defense, there "is an exception when 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Flowers*, 2023 WL 15474, at *2, *quoting United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *Holmes v. Marion County Sheriff's Office*, 141 F.4th 818, 822 (7th Cir. 2025) ("When the face of the complaint admits all the ingredients of an impenetrable defense, the plaintiff has pleaded himself out of court, and the district court may dismiss for failure to state a claim under Rule 12(b)(6).") (cleaned up).

The relevant dates are as follows:

- Castelli died on July 20, 2017. (Compl. ¶¶26, 53).
- Shannon was charged with involuntary manslaughter on September 8, 2017. (*Id.* ¶¶60, 63).
- Shannon was charged with first-degree murder, arrested, and detained on December 22, 2017. (*Id.* ¶65).
- The grand jury met on January 2, 2018 to determine whether to indict Shannon on the first-degree murder charge. (*Id.* ¶133).
- The grand jury found no probable cause for the charge to indict Shannon. (*Id.*).
- Shannon was released from custody on January 3, 2018. (*Id.* ¶67).
- The prosecution dropped the murder charge on January 9, 2018. (*Id.* ¶68; Dckt. #27-2).
- Shannon's bench trial with Judge Ryan for involuntary manslaughter started on September 4, 2018. (Compl. ¶69).
- Judge Ryan found Shannon guilty of involuntary manslaughter on September 13, 2018. (*Id.* ¶70).
- A new trial was ordered on December 23, 2019. (*Id.* ¶73). There are no allegations that Shannon was detained pending his new trial.
- Shannon's second trial with Judge Dickenson began in February 2024. (*Id.* ¶80).
- Shannon was acquitted of involuntary manslaughter on March 14, 2024. (*Id.* ¶81).
- Shannon filed suit against defendants on November 22, 2024. (Dckt. #1).

ii.  **Shannon's Unlawful Detention Claim is Governed by the Fourth Amendment.**

As an initial matter, "a §1983 claim for unlawful pretrial detention (like Shannon's) rests *exclusively* on the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir.

9

2019) (emphasis in original). Because Shannon's alleged injury, his detainment, never led to any trial—or even to an indictment—his claim is governed by the Fourth Amendment. While Shannon fails to respond to the defendants' argument that the Fourteenth Amendment is inapplicable, any such argument would fail because Shannon's Complaint contains no allegations of any form of detention during or after trial and it is "the Fourth Amendment, not the Due Process Clause, [that] is the source of the right in a §1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process." *Lewis*, 914 F.3d at 479.

### ii. Shannon's Unlawful Detention Claim is Time-Barred.

The parties disagree about the date when Shannon's claim accrued. According to defendants, Shannon's claim is time-barred because his claim accrued upon his release from pretrial detention on January 3, 2018, over six years before he brought suit. (Dckt. ##18 at 4–5; 22 at 22–23; 27 at 13–14). Shannon responds that his claim is timely because his two-year period to file suit did not start until his March 14, 2024 acquittal date because, according to Shannon, his Section 1983 claim would imply the invalidity of the ongoing criminal charge against him for involuntary manslaughter. (Dckt. #26 at 24–25).

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), only a claim that "necessarily" implies the "invalidity of a conviction" is barred. *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008). To properly analyze *Heck*, a court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed until the plaintiff can show the conviction or sentence has been invalidated." *VanGilder v. Baker*, 435 F.3d 689, 691–92 (7th Cir. 2006) (cleaned up). In *McDonough v. Smith*, 588 U.S. 109, 112 (2019), the Supreme Court extended *Heck* to plaintiffs with criminal cases pending and considered whether a Section 1983 case would challenge the validity of the ongoing

10

criminal proceedings. If "the basis for the suit" undermines a criminal proceeding, such as a Section 1983 claim under the Fourth Amendment right to be free from unreasonable seizure where the underlying criminal proceeding concerns a resisting arrest charge where "lawful arrest" is a necessary element of the crime, a Section 1983 claim cannot proceed. *Pyles v. Strebing*, No. 24-1797, 2025 WL 2083900, at *2 (7th Cir. July 24, 2025) (cleaned up). "But '[m]any claims that concern how police conduct searches or arrests are compatible with a conviction.'" *Id.*, quoting *Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010). Generally, "the end of detention usually starts the clock." *Williamson*, 2020 WL 7013970, at *5.

Here, the only detention Shannon can point to is the twelve days he spent detained from December 22, 2017 to January 3, 2018. (Compl. ¶¶65–67, 139). Shannon admits that the detention was related to his murder charge, and *not* to his involuntary manslaughter charge that ultimately proceeded to trial. (*See id.* ¶139 ("After spending twelve days in custody on a murder charge that was not supported by probable cause, Shannon was released from jail.")). It is not disputed that the murder charge lacked probable cause. The prosecution dismissed the murder charges a few days after the grand jury "refused to find probable cause," and Shannon was released. (*Id.* ¶138; Dckt. #27-2 ("The grand jury was presented count 2 and after consideration did not return a true bill, no probable cause finding as to count 2.")). Shannon therefore knew that he was detained in the absence of probable cause by January 9, 2018, at the latest (the date the prosecution dismissed the murder charge). Shannon does not allege that he was ever detained in relation to his involuntary manslaughter charge.

Shannon nonetheless argues that his two-year statute of limitations did not begin to run until March 2024, when he was acquitted of involuntary manslaughter, which would make his lawsuit (filed on November 22, 2024) timely. Shannon suggests that his ongoing criminal case

11

for involuntary manslaughter prevented him from suing but does not support this suggestion with citation to any apposite precedent or persuasive authority.[5] Once more, any Section 1983 claim for unlawful detention in connection with the dismissed first-degree murder charge would not call into question Shannon's conviction-turned-acquittal on the involuntary manslaughter charge. *See Sweeney v. Kramer*, No. 2:21 CV 156, 2021 WL 2012694, at *1 (S.D.Ind. May 20, 2021) ("*Heck*'s application is narrow" and "never barred this suit, so the statute of limitations had run before [plaintiff's] federal conviction was vacated.").

In *Wallace v. Kato*, 549 U.S. 384, 393 (2007), the Supreme Court declined the plaintiff's request for a "bizarre extension of *Heck*" that would require tolling for "anticipated future convictions" and reasoned that "[t]he impracticality of such a rule should be obvious," including whether a future potential case gets dismissed. *Id.* Shannon is likewise seeking a bizarre extension of *Heck*—he asks for *Heck* to toll his Fourth Amendment claim where he was detained for first degree murder from which no indictment, criminal proceeding, or conviction ever materialized. He cannot rely on proceedings concerning a separate charge that did not involve pretrial detention (namely, the involuntary manslaughter charge) to extend the statute of limitations for the detention he experienced in connection with the first-degree murder charge. *Cf. Williamson*, 2020 WL 7013970, at *5 (concluding *Heck* tolled accrual date where Section

---

[5] Shannon cites to case law that restates the general proposition of *Heck*, and all the cited cases concern Section 1983 claims with allegations that directly relate to the underlying criminal case, unlike Shannon's claim. (Dckt. #26 at 13); *see Sanders v. St. Joseph Cty.*, 806 Fed.Appx. 481, 484 (7th Cir. 2020); *Gibson v. City of Chicago*, No. 19-c-4152, 2020 WL 4349855, at *10 (N.D.Ill. July 29, 2020) (claim accrued upon conviction being vacated because it centered on evidence used to secure an indictment); *Moore v. City of Chicago*, 2020 WL 3077565, at *4 (N.D.Ill. 2020) (same); *Culp v. Flores*, 454 F.Supp.3d 764, 769 (N.D.Ill. 2020) (same); *Barnett v. City of Chicago*, 2020 WL 4336063, at *3 (N.D.Ill. 2020) (same); *Anderson v. City of Chicago*, No. 16-cv-1963, 2019 WL 6327226, at *6 (N.D.Ill. Nov. 26, 2019) (same); *Spencer v. Vill. of Arlington Heights*, 2020 WL 4365640, at *2 (N.D.Ill. 2020) (*Heck* barred unlawful pretrial detention claim until underlying charges were dropped). All cases are distinguishable because Shannon was never indicted for first-degree murder and any Section 1983 claim would not call into question the validity of his ongoing criminal case.

1983 claim and criminal case both hinged on the credibility of an officer's testimony, making the two cases inconsistent with each other). *Heck* therefore provides no basis for tolling the statute of limitations and Shannon filed his Complaint years after the two-year statute of limitations expired. Accordingly, Shannon's pretrial detention claim is untimely, and it is dismissed.

### B. Shannon's Due Process Claim Alleging Fabrication is Dismissed.

"The essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). A fabrication claim under the Fourteenth Amendment has four elements: "(1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result." *Brown v. City of Chicago*, 633 F.Supp.3d 1122, 1156–57 (N.D.Ill. Sept. 30, 2022) (cleaned up). Relevant here, a plaintiff must plead a deprivation of liberty for a Fourteenth Amendment fabrication claim. *See Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012).

Shannon bases his claim on the following actions by one or more of the defendants:

- "falsifying Dr. Arangelovich's opinions and creating a fraudulent supplemental report," (Dckt. #26 at 14–18);
- "fabricating a police report documenting Clouse's statement," (*id.* at 18–19);
- "fabricating Officer Norman's testimony," (*id.* at 20–21);
- "fabric[ating] Wilkinson's testimony," (*id.* at 21); and
- "working with police to create a false search warrant affidavit," (*id.* at 21–22).

The parties quibble over whether the defendants, primarily the Prosecutors, are entitled to absolute immunity for Shannon's theories of fabrication, which centers on whether the actions alleged constitute investigatory actions or prosecutorial actions. *See Buckley v. Fitzsimmons*, 509

13

U.S. 259, 273 (1993). However, Shannon's Complaint suffers from a larger issue: even assuming defendants fabricated the evidence alleged, Shannon fails to allege that he suffered any deprivation of liberty. Fabrication "doesn't implicate due-process rights *unless* the fabricated evidence 'is later used to deprive the criminal defendant of [his] liberty in some way.'" *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016), *quoting Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) (emphasis in original).

As noted above, Shannon was subject to twelve days of pretrial detention in relation to the dismissed murder charge but he does not allege any pretrial or post-trial detention related to his involuntary manslaughter charge. While Judge Ryan found Shannon guilty of involuntary manslaughter, Judge Dickenson ordered a new trial and Shannon was ultimately acquitted. Furthermore, the Complaint is devoid of allegations suggesting that Shannon was detained between the end of his first trial and the outset of his second trial and ultimate acquittal.

"Simply put, 'even when the prosecution uses fabricated evidence at trial, the defendant's due process claim is wiped away if he is released on bond and then acquitted.'" *Smith v. City of Chicago*, No. 18 CV 4918, 2019 WL 95164, at *4 (N.D.Ill. Jan. 3, 2019), *quoting Holmes v. Curran*, No. 17 CV 3031, 2018 WL 2933648, at *2 (N.D.Ill. June 12, 2018); *Bianchi*, 818 F.3d at 320 ("Bianchi and his colleagues suffered no deprivation of liberty; they were acquitted at trial."). In *Alexander v. McKinney*, 692 F.3d at 555–57, the plaintiff was arrested, immediately released on bond, and found not guilty at his underlying criminal trial. The Seventh Circuit rejected his attempt to later sue the prosecutor and investigators for manufacturing false evidence and bringing "trumped-up" charges, finding that the plaintiff's acquittal foreclosed any fabrication claim and noted that the "burden of appearing in court and attending trial" did not constitute a liberty deprivation. *Id.* at 557. The Seventh Circuit again reinforced this principle in

*Cairel v. Alderden* and found that "a plaintiff who has been released on bond following his arrest and who was later acquitted at trial could not maintain a due process claim for fabrication of evidence" because no liberty interest was implicated. *Waterworth v. City of Joliet*, No. 17 CV 4990, 2018 WL 2846393, at *4 (N.D.Ill. June 11, 2018) (citing *Cairel*, 821 F.3d at 831); *see also Urban v. Altamirano*, No. 15 CV 50301, 2017 WL 36469, at *4–5 (N.D.Ill. Jan. 4, 2017) (dismissing claim where plaintiff was released after a few days, relying on *Cairel*).

In sum: even if the Court accepts that the evidence pertaining to the involuntary manslaughter charge was fabricated, Shannon was neither imprisoned nor denied liberty in any sense based upon it. Nor can Shannon rely on the pretrial detention related to the dismissed first-degree murder charge to support his claim because the falsified evidence related to that charge (namely, Officer Norman's allegedly perjured grand jury testimony) was insufficient to persuade the grand jury to indict Shannon, let alone to persuade a petit jury to convict him at a trial. As such, Shannon has failed to adequately plead a Fourteenth Amendment fabrication claim.

### C. Shannon's Conspiracy and Failure to Intervene Claims Fail Without an Underlying Constitutional Violation.

Shannon also brings claims for Section 1983 conspiracy and failure to intervene. To establish liability for conspiracy under Section 1983, a plaintiff must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Failure to intervene "is a theory of liability under section 1983, specifically, a way to prove the liability of a state actor who was not a direct participant in the challenged wrongdoing." *Fields v. City of Chicago*, No. 10 CV 1168, 2014 WL 477394, at *10 (N.D.Ill. Feb. 6, 2014); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (listing the elements of a failure to intervene claim).

15

It is well-settled that Shannon cannot maintain his conspiracy and failure to intervene claims in light of his failure to adequately allege a violation of his constitutional rights. *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) ("conspiracy, and failure to intervene . . . each depend on proof of an underlying constitutional violation."); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("conclusion that the Cefalus suffered no constitutional injury thus forecloses relief on the conspiracy claim"). Accordingly, Shannon's conspiracy and failure to intervene claims fail as well and must be dismissed.

### D. Shannon's *Monell* Claim Against the County of LaSalle is Dismissed.

A municipality may be liable for a Section 1983 violation only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). As such, there is a basis for municipal liability where there is a widespread practice that is so permanent and well-settled that it constitutes a custom or practice. *Id.* (citing *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (cleaned up)). Shannon asserts a "Policy and Practice Claim" against the County of LaSalle alleging, *inter alia*, that it "had notice of a practice by their officers and agents of manufacturing false evidence, suppressing evidence, and instigating false criminal charges, including the falsification of statements and reports, fabricating false evidence to implicate defendants in criminal conduct, failing to maintain or preserve evidence, and pursuing wrongful convictions through profoundly flawed investigations." (Compl. ¶209).

A municipality, however, cannot be liable under *Monell* when there is no proof of an underlying violation of a plaintiff's constitutional rights by a municipal employee. *See,*

*e.g.*, *King ex rel. King v. E. St. Louis Sch. Dist. 189,* 496 F.3d 812, 817 (7th Cir. 2007). For reasons the Court has already explained, none of Shannon's constitutional claims survive dismissal and his *Monell* came must also be dismissed.[6]

### E. The Court Relinquishes Jurisdiction Over Shannon's State Law Claims.

With the federal claims dismissed, only Shannon's state law claims for "willful and wanton conduct," civil conspiracy, and intentional infliction of emotional distress remain. The Seventh Circuit has embraced a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Accordingly, the Court, in its discretion, declines to exercise supplemental jurisdiction over Shannon's pendent state law claims. *See Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Doxtator v. O'Brien*, 39 F.4th 852, 867 (7th Cir. 2022) ("Without any federal claims over which it had original jurisdiction, the district court's decision not to exercise supplemental jurisdiction over the pendent state law claims was

---

[6] The Prosecutors present an additional argument that Shannon's *Monell* claim must be dismissed because it was brought against the wrong party. (Dckt. #22 at 23–24). They argue that the County has no authority over the sheriff's department or its training and cannot be held liable for the conduct of the State's Attorney's Office. *See Martinez v. Sgt. Hain*, No. 16 CV 2237, 2016 WL 7212501, at *4 (N.D.Ill. Dec. 13, 2016) ("[C]ourts routinely dismiss *Monell* claims against counties predicated on alleged misconduct by the sheriff's office."); *Fairley v. Andrews*, 300 F.Supp.2d 660, 670 (N.D.Ill. 2004) ("Cook County cannot be directly liable because it has no authority over the Cook County Sheriff or his deputies."); *see also Parker v. Lyons*, No. 11 CV 1441, 2013 WL 12376655, at *3 (C.D.Ill. Nov. 22, 2013) (dismissing *Monell* claim against Peoria County because "under Illinois law, the state's attorney is clearly not a policymaker for the county."). Because the *Monell* claim fails for lack of an underlying constitutional violation, the Court need not reach this issue.

17

not an abuse of discretion."). Accordingly, Shannon's state law claims against defendants are dismissed without prejudice.[7]

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss, (Dckt. ##18, 20, 22), are granted as to plaintiffs' federal claims and those claims are dismissed without prejudice. The Court relinquishes jurisdiction over plaintiffs' state law claims and dismisses them without prejudice. The Court grants plaintiff until August 21, 2025 to file an Amended Complaint, to the extent he can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11. If plaintiff fails to file an Amended Complaint on or before this date, the dismissal of his federal claims will become a dismissal with prejudice with no further action.

**DATE: July 31, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

---

[7] Because Shannon's Complaint fails to state a claim under Rule 12(b)(6), the Court declines to address certain defendants' additional argument that it should be dismissed under Rules 8 and 10. (*See* Dckt. ##18 at 3–4; 22 at 13–14).