**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MASON SHANNON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 24-cv-12078** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **KAREN DONNELLY,** | ) | |
| **GEORGE MUELLER, GREGORY** | ) | |
| **STICKA, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendants' joint opposed motion to dismiss plaintiff Mason Shannon's first amended complaint. (Dckt. #34). For the reasons explained below, the Court grants the motion, dismisses Shannon's federal claims with prejudice, declines to exercise supplemental jurisdiction over Shannon's pendent state law claims, and dismisses those claims without prejudice to their refiling in state court.

## I. BACKGROUND

The facts, procedural history, and relevant legal standards are recounted at length in the Court's July 31, 2025 Memorandum Opinion and Order ("Opinion"). (Dckt. #30 (available at 2025 WL 2174421 (N.D.Ill. July 31, 2025)). In brief, Shannon brings an eleven count first amended complaint[1] in which he alleges that defendant prosecutors and police officers violated his constitutional rights and Illinois common law by conspiring to falsify evidence and unlawfully detain him in connection with Michael Castelli's death. (Dckt. #32). With reference to the constitutional claims discussed below, Shannon was: (1) charged with involuntary

[1] Shannon acknowledges that his first amended complaint contains "essentially the same underlying factual allegations" as his original complaint. (Dckt. #36 at 3).

manslaughter on September 8, 2017; (2) subsequently charged with first-degree murder on December 22, 2017 and placed into pretrial detention; and (3) released from detention on January 3, 2018, the day after the grand jury found no probable cause to indict him with murder. Defendant prosecutors dropped the murder charge on January 9, 2018, and Shannon was tried and found guilty of involuntary manslaughter on September 13, 2018. After a new trial was ordered and held, Shannon was found not guilty of involuntary manslaughter on March 14, 2024. Shannon filed this lawsuit on November 22, 2024.

## II. DISCUSSION

### A) Shannon's Pretrial Detention Claim Is Time-Barred

Shannon's Section 1983 pretrial detention claim focuses on the twelve-day period of time between December 22, 2017 and January 3, 2018, when he was detained in connection with the first-degree murder charge. (Shannon was never detained in connection with the involuntary manslaughter charge.) As the Court previously recognized—and as Shannon does not dispute in his response to defendants' motion—Shannon's pretrial detention claim arises exclusively under the Fourth Amendment and is subject to a two-year statute of limitations. (Dckt. #30 at 9–10). Because a wrongful detention claim ordinarily accrues on, and the statute of limitations runs from, the date that a plaintiff is released from alleged wrongful detention (here, January 3, 2018),[2] defendants assert that the statute of limitations expired on January 3, 2020 and Shannon's claim (filed more than four and one half years later) is untimely.

[2] *See* (Dckt. #30 at 11); *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("The wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends."); *Williamson v. Ortiz*, No. 18 CV 2038, 2020 WL 7013970, at *5 (N.D.Ill. Nov. 28, 2020).

Shannon retorts by asserting that his pretrial detention claim is timely filed because it did not accrue until he was acquitted on the involuntary manslaughter charge on March 14, 2024, pursuant to the doctrine articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994). This is so, according to Shannon, because defendants relied on the same fabricated evidence to support both the first-degree murder charge and the involuntary manslaughter charge, and a finding that his detention in connection with the dismissed murder charge was unlawful would have implied the invalidity of his ongoing prosecution for the involuntary manslaughter charge. Shannon further asserts that the timing of the filing of the first-degree murder charge shows that it is "innately connected" to the involuntary manslaughter charge because defendants filed and threatened to refile the murder charge to pressure him to plead guilty to involuntary manslaughter. (Dckt. #36 at 5–10). For the reasons explained below, the Court disagrees.

To begin, as explained in the Opinion, (Dckt. #30 at 10–11), the *Heck* doctrine would apply to delay the accrual of Shannon's pretrial detention claim until the date that he was acquitted on the involuntary manslaughter charge only if a judgment on his pretrial detention claim would "necessarily imply" the invalidity of his ongoing prosecution for involuntary manslaughter. *See Heck*, 512 at 487 ("[W]hen a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor would necessarily imply the invalidity of his conviction or sentence.").[3] To prevail on his pretrial detention claim, Shannon must show that he was detained in connection with the first-degree murder charge without probable cause. *Manuel*, 903 F.3d at 970. Thus, the precise question is whether a judgment that Shannon was

[3] The Court notes that Shannon, in his brief, suggests that a judgment in his favor on the pretrial detention claim would need only "imply" the invalidity of his ongoing prosecution to trigger the application of *Heck*. (Dckt. #36 at 6). However, this waters down his burden, as there is a meaningful difference between "necessarily imply" and "imply."

detained on the first-degree murder charge without probable cause would necessarily imply that his ongoing prosecution for involuntary manslaughter is invalid. The answer is no.

First-degree murder and involuntary manslaughter are separate crimes that are specified by different provisions of Illinois law. *Compare* 720 ILCS 5/9-1 (First Degree Murder) *with* 720 ILCS 5/9-3 (Involuntary Manslaughter and Reckless Homicide). The principal difference between first-degree murder and involuntary manslaughter is that they require different and "inconsistent mental states." *People v. Tucker*, 614 N.E.2d 1265, 1269 (Ill.App.Ct. 1993). Specifically, "[t]he state of mind for murder is knowledge, while the *mens rea* for involuntary manslaughter is recklessness." *People v. Leach*, 939 N.E.2d 537, 550 (Ill.App.Ct. 2010), *aff'd*, 980 N.E.2d 570 (Ill. 2012). As such, "[i]nvoluntary manslaughter requires less culpability than first degree murder." *People v. Lengyel*, 38 N.E.3d 171, 178 (Ill.App.Ct. 2015).

For this reason, an acquittal or finding of lack of probable cause for a first-degree murder charge does not "necessarily imply" the invalidity of an ongoing prosecution for involuntary manslaughter. This is true even where, as here, the *same* evidence underlies both charges. For example, in *People v. Williams*, 304 N.E.2d 178 (Ill.App.Ct. 1973), the defendant was found not guilty of murder and voluntary manslaughter but guilty of involuntary manslaughter. *Id.* at 179. On appeal, defendant argued that his acquittal on the murder and voluntary manslaughter charges necessarily showed that the state failed to prove him guilty of involuntary manslaughter. The Illinois Appellate Court rejected defendant's argument and held that "[a]n analysis of the murder and voluntary manslaughter counts of the indictment d[id] not necessitate the conclusion, as a matter of law or indisputable inference, that the jury must have acquitted only on the ground of justified use of force," which would have been a defense to the involuntary manslaughter charge. *Id.* at 181; *see also United States v. Carpenter*, 162 F.4th 876, 884 n.1 (7th Cir. 2025) (The

dismissal of one criminal charge "based on the same evidence" as a second criminal charge did not undermine defendant's conviction on the second charge where "[t]he statutes criminalize different conduct and contain different language.").

Similarly, here, defendants' decision to drop the first-degree murder charge did not necessarily imply the invalidity of defendants' prosecution of Shannon for involuntary manslaughter. To the contrary, Shannon was thereafter tried and convicted of involuntary manslaughter. His conviction was vacated due to the appearance of impropriety created by the fact that the trial judge and the court reporter were married and the judge earned marital income related to the preparation of the trial transcript, (Dckt. #32, ¶¶133–36), and *not* due to the insufficiency of the evidence or the fact that the first-degree murder charge was dropped. Shannon was then tried a second time on the involuntary manslaughter charge. Although Shannon was acquitted, the second trial, like the first, would never have occurred if the decision to drop the first-degree murder charge "necessarily implied" the invalidity of his prosecution for involuntary manslaughter.

Nor does the fact that defendants, per Shannon's allegations, (1) charged Shannon with first-degree murder in the first instance and (2) threatened to re-charge him with murder to coerce him into pleading guilty to involuntary manslaughter trigger the application of *Heck*. As the Sixth Circuit has observed, "the Supreme Court long ago adopted the position that the prosecution may legitimately threaten to bring harsher charges in order to induce a defendant into pleading guilty, despite the fact that the harsher charges, if brought, might appear to penalize a defendant for exercising his right to trial." *United States v. LaDeau*, 734 F.3d 561, 569 (6th Cir. 2013) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363–65 (1978)). Thus, defendants' alleged hardball tactics have been blessed by the Supreme Court, and Shannon has cited no case

where the use of such tactics has triggered the application of *Heck*. More broadly, none of the cases cited by Shannon, (*see* Dckt. #36 at 5–7), involve an analogous factual situation where there were two criminal charges and the wrongful detention claim was based on a dismissed criminal charge that required a greater showing of culpability than the other criminal charge that remained pending.

In sum: because *Heck* did not apply to toll the accrual of Shannon's pretrial detention claim, the first amended complaint establishes on its face that Shannon filed his lawsuit long after the two-year statute of limitations for this claim expired. Accordingly, the Court dismisses Shannon's pretrial detention claim.

**B) Shannon's Due Process Claim Alleging Fabrication of Evidence Is Dismissed.**

As explained in the Court's Opinion, (Dckt. #30), Shannon has not stated a claim for evidence fabrication in violation of the Fourteenth Amendment. To reiterate, to allege a fabrication of evidence claim, Shannon must allege: (1) the defendants knowingly fabricated evidence that was used against him at trial; (2) the evidence was material; and (3) he was damaged as a result. *See, e.g.*, *Mack v. City of Chicago,* 151 F.4th 887, 899 (7th Cir. 2025). "'The essence of a due-process evidence-fabrication claim is that the accused was *convicted and imprisoned* based on knowingly falsified evidence.'" *Id.*, *quoting Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (emphasis added in *Mack*).

As found by this Court in its Opinion and argued by defendants in their current motion to dismiss, Shannon cannot meet this standard because the first-degree murder charge was dismissed before trial and his now-vacated conviction on the involuntary manslaughter charge did not result in Shannon's imprisonment or deprivation of liberty.

Shannon does not respond to defendants' argument in his brief, which amounts to his abandonment of this claim. *See, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *ARJN #3 v. Cooper*, 517 F.Supp.3d 732, 750 (M.D.Tenn. 2021) ("Where a party fails to respond to an argument in a motion to dismiss the Court assumes he concedes this point and abandons the claim.") (cleaned up). Accordingly, the Court once more dismisses Shannon's fabrication of evidence claim.

### C) As Shannon Has Failed to Plead a Viable Claim for the Violation of His Constitutional Rights, His Derivative Federal Claims Fail.

As explained in the Opinion, (Dckt. #30 at 15–17), Shannon's Section 1983 conspiracy and failure to intervene claims fail along with his *Monell* claim because he has failed to plead a viable claim for the violation of his constitutional rights.

## CONCLUSION

For all of the above reasons, defendants' motion is granted, and Shannon's federal claims are dismissed with prejudice, as the Court finds that any further attempt to amend these claims would be futile. *See Ryder v. Hyles*, 27 F.4th 1253, 1258 (7th Cir. 2022) (dismissing case with prejudice based on futility). Finally, the Court, in its discretion and for the reasons stated in its Opinion, declines to exercise supplemental jurisdiction over Shannon's pendent state law claims and those claims are dismissed without prejudice to their refiling in the appropriate state court. (Dckt. #30 at 17–18 (citing cases)).

**Date: August 24, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**